**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **ROTHE DEVELOPMENT, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No.  SA-10-CV-743-XR** |
| | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **DEFENSE AND UNITED STATES** | ) | |
| **DEPARTMENT OF THE AIR FORCE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

On this date, the Court considered Plaintiff's Application for Preliminary Injunction

(Docket Entry No. 2), Defendant's Partial Motion to Dismiss and Original Answer to FOIA

Claim (Docket Entry No. 10), and Plaintiff's Response to Defendant's Motion (Docket Entry No.

11).  For the following reasons, the Court GRANTS Defendant's Partial Motion to Dismiss and

DENIES Plaintiff's Motion for Preliminary Injunction.

**BACKGROUND**

Plaintiff Rothe Development, Inc. ("RDI") has operated the base network control center

("BNCC") and provided other information technology services at the Minneapolis-St. Paul Air

Reserve Station in Minnesota since 1987.  RDI's contract for these services ended on September

30, 2010.[1]  Defendants United States Department of Defense ("DoD") and United States

---

[1]Air Force Contract # FA663-08-D0002 (Exhibit 1 to Def.'s Partial Mot. to Dismiss, Oct. 8, 2010 (Docket Entry No. 10)).

1

Department of the Air Force ("USAF") have decided to insource the work previously performed by RDI rather than renewing or re-competing the contract.

RDI claims that the insourcing decision and Defendants' procedures violate 10 U.S.C. § 2463,[2] which provides guidelines for the DoD's use of civilian employees, and that the decision also violates Defendants' internal regulations and insourcing procedures. RDI sues under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.* It claims that in reaching the decision to insource the scope of work, Defendants (1) unlawfully bundled RDI's current scope of work with scopes of work from other contracts, (2) did not make "like comparisons" of cost or account for the "full cost of manning"; and (3) therefore did not select the true "low cost provider" for the scope of work.[3] RDI also claims that Defendants have unlawfully withheld certain information relating to the insourcing decision in violation of the Freedom of Information Act ("FOIA"). RDI seeks declaratory and injunctive relief.

Defendants have answered RDI's Complaint with regard to the FOIA claims, and moved to dismiss the claims relating to the insourcing decision under 10 U.S.C. § 2463. The motion to dismiss argues that exclusive jurisdiction over the insourcing challenges is granted to the Court of Federal Claims by the Tucker Act, as amended by the Administrative Disputes Resolution Act ("ADRA"), 28 U.S.C. §1491(b)(1), and by the Contract Disputes Act ("CDA"), 41 U.S.C. § 605(a).

---

[2]Pl.'s Orig. Compl. 2, Sept. 7, 2010 (Docket Entry No. 1).

[3]*Id.*

**LEGAL STANDARD**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may seek dismissal of an action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it. *Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002). Once a defendant has filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the burden rests on the plaintiff to establish that the court does indeed have subject matter jurisdiction to hear the case. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992). If this Court lacks jurisdiction to hear RDI's claims, then it also lacks jurisdiction to issue the preliminary injunction. *See e.g., Labat-Anderson, Inc. v. United States*, 346 F.Supp.2d 145, 155 (D.D.C. 2004) (denying motion for preliminary injunction as moot after dismissing claim for lack of subject matter jurisdiction due to COFC's exclusive jurisdiction over procurement-related claim).

The United States is immune from suit except when it consents to being sued. *United States v. Mitchell,* 445 U.S. 535, 538 (1980); *United States v. Testan,* 424 U.S. 392, 399 (1976). Such consent must be express and unequivocal. *Library of Congress v. Shaw,* 478 U.S. 310, 318 (1986). The Plaintiff must demonstrate by a preponderance of the evidence that jurisdiction is proper. *Libertarian Party v. Dardenne,* 595 F.3d 215, 217 (5th Cir. 2010); *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001). The APA waives sovereign immunity and confers jurisdiction of the federal district courts only if there is "no other adequate remedy." 5 U.S.C. § 704; *Telecare Corp. v. Leavitt,* 409 F.3d 1345, 1349 (Fed. Cir. 2005).

Under well-settled Fifth Circuit precedent, a preliminary injunction is an extraordinary

3

remedy that should not be granted unless the movant demonstrates by a clear showing: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest. *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997). To determine the likelihood of success on the merits, the Court looks to the standards provided by the substantive law. *See Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 622 (5th Cir. 1985).

## ANALYSIS

### 1. This Court lacks subject matter jurisdiction over RDI's insourcing challenges

Defendants argue that RDI's challenge to the insourcing decision should be dismissed because this Court lacks jurisdiction to hear the claims. While RDI brings its challenge pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, Defendants argue that the claims are within the exclusive jurisdiction over procurement-related challenges granted to the COFC by the Tucker Act, as amended by the Administrative Dispute Resolution Act ("ADRA"). In the alternative, Defendants argue that the claims in fact arise out of RDI's previous contract with DoD, and thus fall under the COFC's exclusive jurisdiction under the Contract Disputes Act ("CDA").

### a. RDI's claims fall within the Tucker Act and the ADRA's grant of exclusive jurisdiction to the COFC

The Tucker Act, 28 U.S.C. § 1491(b), as amended by the Administrative Dispute Resolution Act ("ADRA") of 1996, Pub. L. No. 104-320, 110 Stat. 3870, states that:

4

> Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of procurement.  Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

The ADRA also contains a "sunset provision," which states that "[t]he jurisdiction of the district courts of the United States over the actions described in section 1491(b)(1) of title 28, United States Code...shall terminate on January 1, 2001 unless extended by Congress.  110 Stat. at 3875.

Plaintiff cannot avoid its claim falling under the Tucker Act by simply recharacterizing it as a challenge to agency action.  The Fifth Circuit has held that:

> [s]ince the United States by reason of its nature acts only through agents, it is hard to conceive of a claim falling no matter how squarely within the Tucker Act which could not be urged to involve as well agency error subject to review under the APA. Little imagination is needed to foresee the consequences of a holding that such claims as this may be reviewed either in a court having power to grant equitable relief against the United States or in one having none. We refuse to believe that Congress intended, in enacting the APA, so to destroy the Court of Claims by implication.

*Warner v Cox,* 487 F.2d 1301, 1306 (5th Cir. 1974).

### *"Relating to a Procurement or Proposed Procurement"*

The government argues that the terms of the Tucker Act and the ADRA grant exclusive jurisdiction over RDI's claim to the COFC, because it is a claim "relating to a procurement."[4] The Federal Circuit recently reaffirmed that the ADRA grants exclusive jurisdiction to the COFC in all procurement cases.  *Resource Conservation Group, LLC v. United States,* 597 F.3d 1238, 1246 (Fed. Cir. 2010).  In non-procurement cases, the district courts retain jurisdiction.  *Id.*

---

[4]Def.'s Partial Mot.to Dismiss and Orig. Ans. 4, Oct. 8, 2010 (Docket Entry No. 10).

Thus, a "disappointed bidder in a nonprocurement case could also theoretically bring its bid protest challenge in a federal district court, since the ADRA only repealed jurisdiction over procurement cases." *Id.* at n. 12.

RDI argues that its complaint does not challenge a decision relating to "procurement" as that is defined in the Office of Federal Procurement Policy Act (OPPPA), 41 U.S.C. § 403(2).[5] The OPPPA definition applies to the Tucker Act phrase "in connection with a procurement or proposed procurement." *Resource Conservation Group, LLC v. United States,* 597 F.3d 1238, 1244 (Fed. Cir. 2010); *Distributed Solutions, Inc. v. United States,* 539 F.2d 1340, 1345 (Fed. Cir. 2008). "Procurement" is defined in the OPPPA as "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with a contract completion and closeout." 43 U.S.C. § 403(2) (2010). "Acquisition" is defined as "the process of acquiring, with appropriated funds, by contract for purchase or lease, property or services..." 43 U.S.C. § 403(16). RDI argues that insourcing does not fall within these definitions because the government does not hold a solicitation or contract award process in order to accomplish the insourcing action.[6]

The Federal Circuit has held that the phrase "in connection with a procurement" is to be construed broadly. *Distributed Solutions, Inc. v. United States,* 539 F.3d 1340 (Fed. Cir. 2008) (*citing RAMCOR Services Group, Inc. v. United States,* 185 F.3d 1286, 1289 (Fed. Cir. 1999)). "[A]s long as a statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction" *RAMCOR Services Group, Inc. v. United States*, 185 F.3d 1286, 1289

---

[5]Pl.'s Resp. To Def.'s Motion 4, Oct. 19, 2010 (Docket Entry No. 11).

[6]Pl.'s Resp. at 6.

(Fed. Cir. 1999).  The Federal Circuit also stated that where a statute clearly affects the award and performance of a contract, it has "little difficulty concluding [the] statute has a 'connection with a procurement.'"  *Id.*  In *Labat-Anderson, Inc. v. United States,* the District Court for the District of Columbia held that "[e]ven if the first three clauses [of the Tucker Act jurisdictional provision] might be thought to reach 'bid protests' but no further, it strains credulity - and the plain text of the statute - to read the final, blanket clause in as cramped a manner" as the narrow readings such as that suggested by RDI.  346 F.Supp.2d 145, 151 (D.D.C. 2004).

The phrase "in connection with a procurement or proposed procurement" has been interpreted to include "a connection with any stage of the federal contracting acquisition process, including 'the process for determining a need for property or services.'"  *Distributed Solutions,* 539 F.3d at 1346.  Thus, jurisdiction is based on the Tucker Act when the government has at least "initiated 'the process for determining a need' for acquisition."  *See id.*

To determine whether the challenged regulations fall within the Tucker Act's scope of "procurement or proposed procurement," this Court looks to the provisions of the challenged regulations, which provide that:

> DoD Components shall perform an economic analysis to determine whether DoD civilians or private sector contractors are the low cost provider and should perform the work.  Qualified cost analysts/experts shall perform the analyses using cost factors/models that account for the full costs of manpower, as appropriate, and make "like comparisons" of all relevant costs.  Decisions on which costs to include (e.g., overhead, facilities, equipment, supplies, health and retirement benefits) shall depend on what is needed to achieve "like comparisons" and whether the costs are of sufficient magnitude to influence the final decision.[7]

---

[7]Under Secretary of Defense (Personnel and Readiness)'s Guidelines and Procedures for Implementation of 10 U.S.C. §2463 (attached as Exhibit 3, Attachment 2 to Pl.'s Compl.).

In other words, each DoD component is instructed to engage in a detailed process to evaluate whether it is cost-effective to use civilian employees to satisfy its needs, or whether instead it should engage in a procurement process in order to acquire the necessary services.  This is not an evaluation of an "abstract need" or a "speculative" future procurement process as asserted by RDI,[8] but rather a specific and detailed process for evaluating the costs and benefits in relation to a previously identified, specific and concrete need.

RDI argues that Defendants' insourcing decision "has nothing to do with 'the process of acquiring property or services,'" while also arguing that it amounts to a decision to meet a particular need "without 'acquiring property or services.'"[9]  The Court does not agree that the decision not to acquire services from a competitive outside source, based on a detailed comparison of the costs of both public and private sources as required by the regulations at issue, has "nothing to do with" the process of acquisition.  The guidelines specifically instruct the DoD to carefully consider its needs and determine whether such an acquisition is necessary.  A decision to insource is a decision not to acquire, not to enter a procurement process, and thus is necessarily a decision made "in connection with a procurement or proposed procurement" as required under the terms of the Tucker Act.[10]

---

[8]Pl.'s Resp. at 6.

[9]*Id* at 6-10.

[10]The Court notes that if a DoD component were to follow the regulations and procedures and come to the opposite conclusion, that procuring the services from an outside source was necessary, then claims relating to that decision would clearly fall under the Tucker Act.  It is illogical to conclude that a challenge to the identical procedure does not fall under the Tucker Act when, for economic reasons, it happens to result in the opposite outcome.

**RDI is an "Interested Party"**

RDI also argues that its claims do not fall within the Tucker Act because it does not meet the statute's definition of "interested party."[11]  The term "interested party" has the same meaning under the Tucker Act as under the Competition in Contract Act ("CICA").  *American Federation of Government Employees v. United States,* 258 F.3d 1294, 1299-1302 (Fed. Cir. 2001).  An "interested party" is an "actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract."  31 U.S.C. § 3551(2)(A); *American Federation,* 258 F.3d 1299-1302.  RDI's complaint states that it "seeks through this lawsuit to keep its scope of work in the competitive realm in order to re-compete for the work."[12]  Thus RDI voluntarily identifies itself as a prospective bidder in a future procurement process, whose economic interest may be harmed by the decision not to award the contract.  Yet even while acknowledging that its ultimate goal is a procurement process, RDI also argues that its claims do not fall within the scope of a statute which covers procurement-related challenges.

The Court notes that, for a plaintiff to have standing to bring an APA challenge, the challenged agency action must have caused the plaintiff an injury in fact, and the injury must have been one that is arguably within the zone of interest to be protected or regulated.  5 U.S.C. § 702; *Lujan v National Wildlife Federation,* 497 U.S. 781, 883 (1990); *Clarke v. Securities Industry Ass'n,* 479 U.S. 388, 396-397 (1987); *Stockman v. Federal Election Commission,* 138 F.3d 144, 150-151 (5th Cir. 1998).  The regulations in this case were created to improve the

---

[11]Pl.'s Resp. at 10-13.

[12]Pl.'s Compl. at 13.

DoD's "ability to reduce costs and manage the defense workforce."[13]  RDI's only colorable zone

of interest argument is that the regulations also protect the rights of potential contractors by

ensuring that insourcing is limited to those instances where it is cost-effective to do so.  In order

to fall within the zone of interest, RDI must have been injured by the government's decision to

remove the scope of work from the competitive realm.  It must be, in other words, a potential

bidder.  RDI cannot rely on its potential bidder status for its theory of APA standing and

simultaneously refute it in an effort to keep its lawsuit in this Court.

***The Vero Decision***

RDI relies heavily on the COFC's recent decision in *Vero Technical Support, Inc. v.

United States,* which addressed a similar insourcing challenge, apparently in an attempt to

persuade this Court that the COFC does not believe it has exclusive jurisdiction over such

challenges.  2010 WL 3835835 (Fed. Cl. Sep. 29, 2010).  Vero had originally challenged the

insourcing in a federal district court under the APA, and the claims were dismissed for lack of

subject matter jurisdiction.  *Id.* at *3.  Vero subsequently filed the same claims in the COFC,

seeking a "timely decision" of whether the COFC had jurisdiction under the ADRA, "to avoid

prejudicing [Vero] under 28 U.S.C. § 1500 with respect to any appeal it may need to take of the

district court's dismissal" in the event that the COFC found that it did not have jurisdiction.  *Id.*

Vero had not yet filed an appeal of the district court's decision that it lacked jurisdiction at the

time when it filed in the COFC.  *Id.*

The COFC denied jurisdiction of the case at that time, relying on 28 U.S.C. § 1500,

---

[13]Memorandum for Secretaries of the Military Departments, Apr. 4, 2008 (attached as Exhibit
3 to Pl.'s Compl.).

Case 5:10-cv-00743-XR   Document 14   Filed 11/03/10   Page 11 of 16


which precludes the COFC from exercising jurisdiction over any claim against the United States

pending by the same plaintiff in any other court.

> The court acknowledges that if jurisdiction is clearly not available in the first court in which a plaintiff files, then application of section 1500 by the Court of Federal Claims could unfairly force a plaintiff into jurisdictional roulette between courts... In Vero's case, although the District Court declined jurisdiction, and dismissed Vero's District Court case, plaintiff's time for appeal of that decision has not passed. Moreover, plaintiff's deliberate choice of forum in the District Court and chosen basis for jurisdiction, traditional APA jurisdiction, resonates with this court. Without a contract or solicitation at issue, even as amended by the ADRA, Tucker Act jurisdiction to challenge the insourcing decisions is not immediately apparent. *In this Order, however, the court does not address the propriety of jurisdiction in the Court of Federal Claims, and has not fully explored the issue at this time.* As noted, however, plaintiff still has an appeal available to resolve the District Court jurisdiction issue raised by the dismissal of the lawsuit initiated in that court.

*Id.* at *7 (emphasis added).

RDI places great weight on the statement that Vero's choice of federal district court and

APA jurisdiction "resonates" with the COFC, but wholly ignores the clear statement that the

COFC had not yet fully explored the issue of the propriety of its jurisdiction over the claims, and

specifically declined to make a ruling on such jurisdiction. The COFC's denial of jurisdiction in

that case rested on the fact that the district court case was still pending because Vero was still

within its time frame for filing an appeal. The Court did not render any holdings regarding the

merits of Vero's jurisdictional claims. RDI's reliance on the decision is unpersuasive, and the

opinion does not indicate how the COFC is likely to decide in the circumstances of the present

case.

**b. Contract Disputes Act**

The CDA "bars district court jurisdiction if the court determines that a plaintiff's claims

against a government agency are 'essentially contractual' in nature." *Ingersoll-Rand Co. v. U.S.*,

780 F.2d 74, 76 (D.C. Cir. 1985) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982)).  However, "a plaintiff may not avoid the jurisdictional bar of the CDA merely by alleging violations of regulatory or statutory provisions rather than breach of contract." *Id.* at 77.

The government argues that RDI, as an incumbent contractor, raises a CDA claim, and ultimately seeks to force the government to continue to contract for its services under the current contract.[14]  RDI argues that its claim does not fall under the CDA because it is not "contractual in nature,"[15] and that there is no basis for the government's assertion that its desired remedy is to remain in performance on the contract or otherwise.[16]  RDI argues that its challenge is not contractual, but rather is based on an improper agency action under the APA, and that it does not seek contractual relief.[17]

A claim falls within the CDA only if it is "at heart a contract case."  *United States v. J & E Salvage Co.,* 55 F.3d 985, 989 (4th Cir. 1995).  In determining whether a case is essentially contractual and thus governed by the CDA, a Court should consider whether the plaintiff relies on contractual rights and whether the relief sought is contractual in nature.  *See id; Megapulse, Inc. v. Lewis,* 672 F.2d 959, 969 (D.C. Cir. 1982)

Here, RDI does not base its claim on its current contract, but rather challenges the decision to insource the work rather than to procure a subsequent contract.  RDI claims no contractual right with regard to preventing the insourcing.  It only claims that the government has

---

[14]Def.'s Mot. at 7.

[15]Pl.'s Resp. at 18-21.

[16]*Id.* at 20.

[17]*Id.*

violated its own procedures and regulations in deciding to insource the scope of work at issue. Furthermore, the remedy sought by RDI is not contractual in nature. Defendants mischaracterize RDI's suit by concluding that it seeks the award of another contract or continued performance on its prior contract. The only relief requested in RDI's complaint is (1) a declaratory judgment that Defendants' insourcing decision is unlawful, (2) an injunction against the Defendants from going forward with the insourcing decision, (3) an injunction to prevent Defendants from withholding the documents requested by RDI's FOIA request and production of those documents, and (4) reasonable attorneys' fees and expenses.[18]

RDI has not sought an injunction to require Defendants to allow RDI to perform under its contract. In contrast, the complaint specifically states that the outcome sought by RDI is the opportunity to re-compete for the scope of work,[19] not a continuation of its current contract. The contract terminated on September 30, 2010, and no injunction issued to prevent the insourcing process. Although the government may choose to maintain RDI's performance, it is not the only option if it is enjoined from going forward with the insourcing process.

RDI's claims are not contractual claims "at heart," and as such, the CDA does not bar this Court's jurisdiction. The Court notes, however, that this finding does not affect the question of jurisdiction under the Tucker Act and the ADRA. RDI argues that, because the case is not a contract case within the CDA, it also does not fall within the "implied" prohibition of federal court jurisdiction over regulatory claims related to contract claims.[20] RDI provides case law

---

[18]Pl.'s Compl. at 13-15.

[19]*Id.* at 13.

[20]Pl.'s Resp. at 22-26.

holding that, when a breach of contract also violates agency regulations or procedures, a district court may properly have jurisdiction over the regulatory claims pursuant to the APA, even where the CDA precludes its jurisdiction over the breach of contract claim itself.[21]  It seeks to extend this holding to a conclusion that this Court must also therefore have jurisdiction over its challenges to the insourcing regulations and procedures in this case.  This argument confuses the jurisdictional prohibitions of the CDA with those of the Tucker Act and ADRA, however, and ignores the ADRA's *explicit* prohibition on district court jurisdiction over procurement claims.

### c. Evidence of Implemented Insourcing Procedures

RDI filed an Advisory on October 25, 2010, notifying the Court that the government has begun implementing its insourcing procedures,[22] in an apparent attempt to urge this Court to act on its preliminary injunction motion.  RDI notes that the government has already hired replacement civilian personnel for two RDI employees who are now training their replacements and will be terminated by December 1, 2010.[23]  RDI also takes great issue with the fact that the government intends to hire two government civilian employees to replace one RDI employee.[24]  RDI argues that this proves the "irrationality" of the insourcing policy.  This assertion, unaccompanied by any cost comparison of the two staffing arrangements, is not persuasive.  The very regulations upon which RDI bases its claim detail a number of cost elements to be considered in the context of service contracts, demonstrating a far more complex analysis than

---

[21]*Id.*

[22]Pl.'s Adv. to the Court, Oct. 25, 2010 (Docket Entry No. 12).

[23]*Id.*

[24]*Id.* at 2.

14

simply counting the number of bodies employed for each contract function.[25]   The Court is not

persuaded by RDI's arguments on this point.   Furthermore, the speed at which the government is

transitioning to an insourced workforce does not affect the question of this Court's jurisdiction.

### 3.  FOIA Claims

RDI also seeks to enjoin Defendants to require them to produce records relating to the

insourcing decision, which it has requested pursuant to the FOIA.   Defendants do not challenge

this Court's jurisdiction over RDI's claims of FOIA violations, and deny RDI's allegations with

respect to those claims.[26]   Defendants argue that the FOIA claims have not yet been denied, and

as such there has been no showing of irreparable harm or probability of success on the merits that

would warrant a preliminary injunction on these claims.[27]

The preliminary injunction factors do not support this Court entering a preliminary

injunction to force Defendants to produce the documents sought by RDI in its FOIA request.   *See*

*Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997).   RDI has not

established a substantial likelihood that Defendant's partial denial of its FOIA request was

unlawful.   RDI has submitted no evidence that it will suffer any irreparable harm if it does not

immediately receive the documentation that was the subject of its FOIA request.   The need to

view the documents is not immediate, but simply relates to the overall evaluation of the merits of

Defendants' actions.   Furthermore, RDI has submitted no evidence that it will suffer any further

injury if it does not immediately receive the documentation that was the subject of its FOIA

---

[25]*See* DTM 09-007, January 29, 2010, at 11 (Attachment 2 to Exhibit 6 of Pl.'s Compl.).

[26]Def.'s Mot. at 9.

[27]*Id.*

request.  The records are likely to be discoverable in any ongoing litigation on this matter, and production and review of them will be appropriate and sufficient at that time.  As such, the Court also denies RDI's motion for a preliminary injunction for production of the documents requested in its FOIA request.

## CONCLUSION

The Court finds that it lacks jurisdiction over RDI's challenges to the Defendants' insourcing decision, because exclusive jurisdiction over such challenges is vested in the COFC pursuant to the Tucker Act and the ADRA.  As such, Defendants' motion to dismiss those claims is GRANTED.  Because the Court lacks jurisdiction over the insourcing challenge, and RDI has not demonstrated that it is entitled to a preliminary injunction on its FOIA claims, RDI's motion for preliminary injunction is DENIED.

It is so ORDERED.

SIGNED this 3rd day of November, 2010.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE